In re the **TELEPHONE COMPANY OF CENTRAL FLORIDA,** Debtor.

No. **6:98–bk–04587–ABB.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

March 11, 2004.

Nicholas B. Bangos, Miami, FL, for Debtor.

## ORDER & JUDGMENT

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came on Debtor, The Telephone Company of Central Florida's ("TCCF" or "Debtor") Objection to the Amended Claim filed by the Internal Revenue Service ("IRS" or "Creditor"). The

following Findings of Fact and Conclusions of Law are made after considering the pleadings submitted, arguments of counsel and evidence presented.

### Findings of Fact

TCCF was an entity that provided communication services from the relevant periods of 1997 until May 26, 1998. Internal Revenue Code § 4291 required TCCF to collect and remit taxes imposed by I.R.C. § 4251 on amounts paid for communication services. TCCF never filed the required tax returns for any of the above periods.[1] TCCF filed for chapter 11 on May 26, 1998.

Elder N. Ripper III, TCCF's then-president ("Ripper") met with IRS agents on July 20, 1998. The parties discussed TCCF's business history and current operations. TCCF provided the IRS with a notebook of information including, revenue history, customer lists, internal billing reports and internal accounting journals. Representatives of TCCF met with IRS agents multiple times between July 20, 1998 and September 2, 1998.

The claims bar date was established as September 21, 1998. The IRS filed a proof of claim in the amount of $583,619.49 on September 2, 1998 ("IRS Claim").[2] The IRS Claim represented sums due for federal excise taxes between March 1997 and March 1998. The IRS Claim was based on information contained in the notebooks supplied by TCCF. The IRS ex-

amination of TCCF was still in its initial stages and the IRS Claims were stamped "PENDING EXAMINATION" for each quarter under the column "Date Tax Assessed." TCCF was aware of the on-going examination and that it had not filed returns for the examination periods.

TCCF filed its Disclosure Statement and Plan of Reorganization on January 25, 1999 ("The Plan"). The Plan contemplated a sale of TCCF's stock to Phoenix International Industries, Inc. ("Phoenix"). The Plan included TCCF's proposed treatment of the IRS Claim. TCCF estimated the total sum of priority tax claims, including the IRS Claim, would not exceed $300,000.[3] Ripper met with representatives of Phoenix and advised them that priority tax claims would not exceed $300,000. The Plan and Disclosure Statement were served on the IRS. The IRS was represented, but did not object to the Plan, Disclosure Statement or Liquidation Analysis.[4] TCCF failed to respond to Information Document Requests on July 20 and November 22, 1998 and February 25 and July 22, 1999 during the IRS examination.

An Order Confirming Debtor's Plan of Reorganization was entered June 9, 1999. The IRS did not object to the Confirmation Order. The Confirmation Order established a thirty (30) day deadline, following entry of the Order, for filing objections

---

1. *See* I.R. form 720.

2. *See* Claim No. 12. The IRS Claim is bifurcated into a priority claim of $564,330.72 pursuant to 11 U.S.C. § 507(a)(8) and a non-priority secured claim in the amount of $19,288.77.

3. TCCF states that they arrived at the $300,000 estimate based on "numerous meetings with [IRS agents]," despite the substantially higher IRS Claim previously filed.

4. The IRS did file an unrelated Objection to Confirmation of TCCF's Plan on May 20, 1998. The IRS contended that TCCF's plan was not feasible because it did not provide for the payment of a potential $651,000 administrative expense claim. The $651,000 administrative expense claim was not filed; instead, the IRS filed an administrative expense claim in the amount of $42,681.78 and withdrew its Objection to Confirmation.

to claims. TCCF filed an Objection to the IRS claim.[5]

The IRS filed a Motion to Compel TCCF to provide the remaining information and documents necessary to complete the examination on January 4, 2000. The IRS filed an amended claim in the amount of $2,849,469.98 on May 1, 2000 ("Amended IRS Claim").[6] The IRS's Amended Claim was for the same taxes and time-periods as their original claim.

### Conclusions of Law

■ The general rule is that an amendment to a proof of claim is freely allowed to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.[7] If the initial claim gives adequate notice of the existence and nature of the claim, and the creditor's intent to hold the estate liable, the amended claim should be allowed.[8]

■ The fact that a subsequent proof of claim is for a greater amount does not prevent the amendment.[9] A proof of claim for unpaid taxes that effectively increases the amount sought does not bar amendment, unless the claim asserts a different tax or a different fiscal timeframe.[10] "Even large increases in the amount of taxes claimed may be asserted by amendment under appropriate circumstances."[11]

■ The Eleventh Circuit Court of Appeals, in *In re International Horizons*,[12] has endorsed a five (5) part balancing test in determining whether to allow a post bar date amendment to a proof of claim stating,

(1) whether the debtors or creditors relied upon...earlier proofs of claim or whether they had reason to know that subsequent proofs of claim would be filed pending completion of an audit; (2) whether other creditors would receive a windfall by the court's refusing to allow amendment; (3) whether [there was an intentional or negligent delay] in filing the proof of claim stating the amount due; (4) the justification for failure...to file a timely extension to the bar date; and (5) whether equity requires consideration of any other factors.[13]

■ TCCF had reason to know that subsequent proofs of claim would be filed pending completion of the IRS examination. The IRS stamped their originally filed proofs "PENDING EXAMINATION" because TCCF had not filed its

---

5. TCCF objected to the IRS Claim for any amount exceeding $126,202.63.

6. The Amended IRS Claim seeks priority claim in the amount of $2,537,787.73 and a non-priority, unsecured claim in the amount of $311,682.25.

7. *See United States v. Int'l Horizons, Inc. (In re Int'l Horizons, Inc.),* 751 F.2d 1213, 1216 (11th Cir.1985).

8. *See In re Marineland Ocean Resorts, Inc.,* 242 B.R. 748, 754 (Bankr.M.D.Fla.1999).

9. *See In re Kolstad,* 928 F.2d 171 (5th Cir. 1991); *see also In re Hanscom Retail Foods, Inc.,* 96 B.R. 33 (Bankr.E.D.Pa.1988).

10. *See In re Candy Braz, Inc.,* 98 B.R. 375 (Bankr.N.D.Ill.1988).

11. 9C Am Jur. 2D *Bankruptcy* § 2393 (2003); *see also In re Tanaka Bros. Farms, Inc.,* 36 F.3d 996 (10th Cir.1994)(allowing amended claim which exceeded originally filed claim by $300,000 where the original claim was filed as an estimate, which gave parties notice that claim was subject to change and IRS filed amended claim once it received debtor's delinquent returns).

12. *See Int'l Horizons,* 751 F.2d at 1218 (citing *Miss Glamour Coat Co.,* 1980 WL 1668 (S.D.N.Y.1980)).

13. *Id.*

returns for the applicable periods. The IRS did not intentionally or negligently delay filing the amended proof of claim. The IRS may well have filed the amended claim earlier if TCCF had fully cooperated with the examination. The IRS had to file a Motion to Compel Discovery to receive the information from TCCF necessary to complete the examination.[14]

The IRS did not file for an extension to the bar date or object to the confirmation of the case. Equitable considerations include whether the IRS should have given notice to this Court, the Debtor and creditors that Debtor's plan was potentially unconfirmable due to the IRS's potential claim. The IRS should have objected to confirmation of Debtor's plan. The IRS's Amended Claim will have far-reaching effects on Debtor's plan and distributions to creditors, however the IRS's actions, or lack thereof, do not overcome the general rule allowing amendments to timely filed claims. When balanced by the *In re International Horizons* factors, the IRS's claim should be allowed.

TCCF argues even if the IRS's claim were allowed the IRS would be equitably estopped from asserting their claim. To invoke the doctrine of equitable estoppel against a federal government agency there must be a showing that the agency engaged in affirmative conduct going beyond mere negligence.[15] The failure of the IRS to request an extension of the claims bar date or object to the confirmation of Debtor's plan does not rise to the level for imposition of equitable estoppel.[16]

The IRS's failure to request an extension of the bar date or object to confirmation does not foreclose the amendment of their claim. The IRS's original and amended claims are for the same time periods, the same taxes and their original proof of claim provided adequate notice that the claim amount could vary, pending conclusion of the examination. Therefore it is,

**ORDERED, ADJUDGED AND DECREED** that Debtor, Telephone Company of Central Florida, Inc.'s Objection to Amended Claim by the Internal Revenue Service is **Overruled;** it is further

**ORDERED, ADJUDGED AND DECREED** that the Internal Revenue Service's Amended Claim No. 12 in the amount of $2,849,469.98 is allowed.

---

14. *See* Doc. 447 filed on January 4, 2000.

15. *See Flight Attendants Against UAL Offset v. C.I.R.*, 165 F.3d 572 (7th Cir.1999). While this case is representative of difficulty of using equitable estoppel against a federal agency all but one of the federal circuits and the United States Supreme Court, implicitly, require establishment of affirmative action. *See* Ann K. Wooster, Annotation, *Taxpayer's Assertion of Equitable Estoppel Against IRS Based on Actions of Agency,* 170 A.L.R. Fed. 447, 2001 WL 578275 (2001).

16. *See In re DePaolo,* 45 F.3d 373 (10th Cir. 1995); *In re Gurwitch,* 794 F.2d 584 (11th Cir.1986), *In re Jensen,* 200 B.R. 5 (Bankr. D.N.H.1996), *In re Stuber,* 142 B.R. 435 (Bankr.D.Kan.1992).